**Vernon SMITH, Appellant,**

v.

**Katie STAFFORD and Margit Cox, Appellees.**

No. S–12255.

Supreme Court of Alaska.

Aug. 8, 2008.

Mark Osterman, Osterman Law Office, P.C., Kenai, for Appellant.

Megan R. Webb, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION ON REHEARING*

CARPENETI, Justice.

## I. INTRODUCTION

This appeal stems from a Child in Need of Aid (CINA) case that was ultimately dismissed with the child's father being granted sole custody of his daughter. He subsequently sued the social worker who handled the case and her supervisor, alleging thirteen causes of action. The superior court dismissed all of the father's claims on summary judgment, holding that the claims were precluded by collateral estoppel or, alternatively, official immunity. Many of the claims were properly dismissed, and as to those we affirm. But because one count of the complaint gave rise to disputed issues of material fact, and the father is not collaterally estopped from litigating that claim, we reverse as to that count and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

Vernon Smith had been separated from his estranged wife Lisa Baker[1] for four months when Baker gave birth to A.B. in February 2000. At the time of A.B.'s birth, Smith was subject to a domestic violence-related restraining order. Although Baker initially served as A.B.'s sole caretaker, this role was short-lived. In April 2000 Baker's substance abuse problems came to the attention of the Division of Family and Youth Services, now known as the Office of Children's Services (OCS).[2] OCS removed A.B. from Baker's home and initiated child in need of aid proceedings, placing A.B. with foster parents, Matt and Candy Copple.

Smith participated in the CINA proceedings with the assistance of appointed counsel. Smith joined Baker in stipulating that A.B. was a child in need of aid and sought custody of A.B. Although Smith was not granted custody of A.B., the court permitted Smith to have supervised visits with her.

Smith's original case plan identified placement of A.B. with him or Baker as the

---

1. "Lisa Baker" is a pseudonym we have used to protect A.B.'s identity.

2. For the sake of consistency we use the current acronym, OCS.

primary goal, but conditioned placement with Smith on his completion of several counseling requirements including a drug and alcohol assessment and participation in batterer's intervention programs. Roughly three months after A.B.'s CINA proceedings began, OCS placed social worker Margit Cox and supervisor Katie Stafford in charge of A.B.'s case. OCS also instituted a concurrent case plan that called for adoption in case A.B.'s reunification with a parent did not occur.

Smith's relationship with Cox began relatively well. In August 2000 Cox placed A.B. with Smith on a temporary and informal basis. This placement did not sit well with Baker, who asserted that Smith was unfit to care for A.B. and requested that the superior court review A.B.'s placement. After Baker's objection, Cox removed A.B. from Smith's home and returned A.B. to the Copples' care. Smith appears to have felt betrayed by the decision to remove A.B. from his care and his relationship with Cox began to sour.

After Cox removed A.B. from his home, Smith perceived Cox as becoming hostile toward him. Smith took issue with the counseling requirements that Cox imposed as part of his case plan, arguing that certain requirements were unnecessary and that in the aggregate they were far too numerous. Smith complained about Cox's handling of the case during a private meeting with Stafford in September 2000. He informed Stafford that the numerous counseling requirements were negatively impacting his ability to keep his job and requested that another social worker be appointed to handle A.B.'s case. Smith alleged that Cox learned about his complaint and subsequently threatened that he would not see A.B. again if he made further complaints.

Despite his objections to the counseling requirements included in his case plan, Smith participated in the mandated counseling programs and his visitation with A.B. was eventually increased. In December 2000 he was permitted several unsupervised home visits with A.B. during the week and A.B. spent weekends with him.

In March 2001 Smith requested that the superior court review A.B.'s continued placement with her foster family, the Copples. The superior court concluded that Cox's decision to keep A.B. in the Copples' care and to condition reunification with Smith on his completion of counseling requirements was "not arbitrary, capricious or manifestly unreasonable." During an early May permanency hearing the superior court again held that A.B.'s continued placement with the Copples was in A.B.'s best interest and noted that Smith needed to "continue to meaningfully" participate in the counseling programs included in his case plan in order to regain custody.

In late May 2001 A.B. left a weekend visit with Smith with a bruise on her cheek. Smith explained that A.B., now a toddler, tripped while trying to walk and hit her cheek on his knee. Cox investigated the incident. She interviewed Smith's son from a previous marriage at his school. Cox then visited Smith's home and documented what she viewed as several dangerous conditions, including empty beer cans and bottles outside the house. Smith alleges that Cox arranged these beer cans and staged a photograph of them. As a result of her home visit observations, Cox required Smith and his live-in girlfriend, Lynn Reynolds, to submit to random urinalysis tests.

Smith learned in July 2001 that the Copples planned to move to Arizona and wanted to take A.B. with them. When Smith again petitioned the superior court to conduct a placement review, the superior court again concluded that continued placement with the Copples was in A.B.'s best interest. The court held that Smith was not capable of caring for A.B. at that time and authorized OCS to place A.B. with the Copples in Arizona. The court nonetheless required OCS to arrange and pay for Smith to make monthly trips to Arizona to spend time with A.B. Smith made several trips to see A.B. in Arizona.

In November 2001 social worker Tim Von Hayden and supervisor Bill Galic took over A.B.'s CINA case. Smith's counseling obligations were diminished and he completed the remaining counseling programs. Von Hayden informed Smith in March 2002 that

A.B. would be placed with him, and in May 2002 A.B. was placed with Smith on a permanent basis. Shortly thereafter, A.B.'s CINA case was dismissed pursuant to OCS's request.

After the CINA case had ended, Smith's attorney interviewed Candy Copple, A.B.'s foster mother. Smith apparently viewed Candy's statements as suggesting that early on in A.B.'s CINA case Cox had assured the Copples that Smith would not be regaining custody of A.B. Candy's statements appear to have convinced Smith that Cox and Stafford conspired to keep A.B. away from him.

### B. Proceedings

Smith sued Cox and Stafford in July 2003 and amended his complaint in August 2004. Smith alleged thirteen separate causes of action. Smith's amended complaint alleged multiple violations of CINA procedures, several defamation and privacy torts, and one violation of 42 U.S.C. § 1983.

Cox and Stafford moved for summary judgment, which the superior court granted. The superior court provided three alternative grounds for dismissing Smith's claims. First, the court held that collateral estoppel applied and barred all of Smith's claims. Second, at least qualified immunity applied under federal law and barred Smith's § 1983 claim. Finally, the court concluded that ei-

ther absolute or qualified official immunity applied and barred all of Smith's state law claims. Smith appeals.

### III. STANDARD OF REVIEW

We review orders granting summary judgment *de novo*.[3] In reviewing a grant of summary judgment, we will "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[4]

The applicability of both state and federal immunity are questions of law that are also subject to *de novo* review.[5] "We may affirm the superior court on any basis supported by the record, even if that basis was not considered by the court below or advanced by any party."[6]

### IV. DISCUSSION

#### A. Defining Smith's Claims

Smith's amended complaint asserts thirteen causes of action against Cox and Stafford.[7] For the sake of clarity, we have placed each cause of action into one of three groups. Group A includes the counts that allege that Cox and Stafford failed to comply with procedures required under CINA statutes.[8] Group B includes Smith's defamation and privacy torts.[9] Finally, Smith alleged

3. *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 n. 7 (Alaska 1994).

4. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992).

5. *See Lawson v. Helmer*, 77 P.3d 724, 726 (Alaska 2003) (*de novo* review for state immunity); *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir.2001) (*de novo* review for federal immunity).

6. *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) (citing *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1269 (Alaska 2001)).

7. Because of the procedural posture of this case, the superior court did not address the merits of the allegations underlying Smith's claims against Cox and Stafford.

8. Group A includes: Count I (Cox and Stafford violated obligation to place child with relative within ninety days of removal); Count II (Cox's

and Stafford's demands were arbitrary, unnecessary, and intended to harass Smith); Count III (Cox and Stafford violated obligation to maintain adequate and accurate case plan for Smith); Count IV (Cox and Stafford abused safeguards by restricting Smith's visitation with A.B.); Count V (Cox and Stafford violated obligation to place A.B. in Smith's home or home of a relative); Count VI (Cox improperly classified A.B. as special needs child); Count XI (Cox improperly conspired to keep A.B. in foster care through special needs classification); and Count XII (Cox improperly placed A.B. in foster care).

9. Group B includes: Count VII (Cox portrayed Smith in a false light by filing a false report about him); Count VIII (Cox portrayed Smith in a false light by creating false medical reports); Count IX (Cox defamed Smith by making false statements about Smith to his ex-wife); and Count X (Cox trespassed on Smith's property, defamed and portrayed Smith in a false light by filing false reports about her findings, and made improper threats).

one count of wrongful deprivation of his constitutional rights under color of law in violation of 42 U.S.C. § 1983, which we will refer to as the § 1983 claim. We address each group of claims in turn.

## B. Smith's Group A Claims Do Not State Viable Causes of Action.

■ Smith's Group A claims attempt to predicate Cox and Stafford's liability on an alleged failure to comply with statutorily mandated procedures for CINA cases. For the reasons discussed below, these claims are not actionable.

Alaska Statutes 47.10.005–.142 set out certain procedures that must be followed in bringing and prosecuting CINA cases. These provisions govern, for example, when a child is considered "in need of aid" and what types of efforts must be made to reunite a child with his or her parents once removal has occurred.

Although AS 47.10.005–.142 create certain obligations for OCS officials involved in CINA cases, none creates a private negligence cause of action for failure to comply with its requirements. To highlight this point, AS 47.10.960 explicitly forecloses any argument that the provisions were intended to serve as the basis for a negligence claim. The version of section .960 in effect when Smith filed his amended complaint provided: "Nothing in this title creates a duty or standard of care for services to children and their families being served under AS 47.10." [10] Addressing this provision in *McGrew v. State, Department of Health & Social Services, Division of Family & Youth Services,* [11]

we held that it prevented grandparents from alleging negligence claims based on OCS's alleged failure to comply with certain CINA statutes. [12]

Here, Smith's Group A claims allege that Smith was injured when Cox and Stafford failed to comply with several of these requirements. Smith's Group A claims sound in negligence: Smith alleges he was injured by Cox's and Stafford's failure to comply with various CINA provisions that established specific duties of care. As in *McGrew,* section .960 precludes Smith from relying on CINA statutes to prove that Cox and Stafford owed him any special duties of care. [13] As Smith's Group A claims depend on a special duty of care that does not exist, these claims are not actionable and were properly dismissed [14] by the superior court. [15]

## C. Smith's Group B (State Tort) Claims, Except The Defamation and False Light Claims Referenced in Count X, Are Barred by Qualified Immunity.

The superior court concluded that at least qualified immunity applied to Smith's state law tort claims and that Smith was unable to overcome that immunity. Smith argues that the superior court erred in concluding that any form of immunity applied and that even if qualified immunity applied, there was an issue of fact regarding Cox's and Stafford's state of mind.

■ Under Alaska law, the doctrines of absolute and qualified immunity protect public officials from tort suits for discretionary acts committed within the scope of their au-

**10.** AS 47.10.960 was amended in July 2005. Ch. 64, § 29 SLA 2005. In its current version, it provides: "Failure to comply with a provision of this title does not constitute a basis for civil liability for damages."

**11.** 106 P.3d 319 (Alaska 2005).

**12.** *Id.* at 323.

**13.** *See id.* at 324 (dismissing negligence claim because section .960 prevents actionable duty from arising out of any provision in Title 47).

**14.** Although the superior court did not cite Smith's failure to state a claim as grounds for

dismissing these causes of action, we may affirm based on any grounds supported by the record. *See Gilbert M. v. State,* 139 P.3d 581, 586 (Alaska 2006).

**15.** We note that parents who find themselves in conflict with OCS officials have remedies that may well be superior to after-the-fact civil suits such as this one: (1) the comprehensive administrative procedures set out in the Alaska Administrative Code at 7 AAC 54.210–.240, which are designed to hear and resolve complaints about OCS officials and (2) the review provisions of Alaska Child in Need of Aid Rule 19.1, which allows court review of OCS's visitation and placement decisions.

thority.[16] Absolute immunity immunizes officials from suit for all official acts without regard to motive.[17] Qualified immunity immunizes official acts only when undertaken in good faith.[18] Both forms of immunity seek to balance the protection of private citizens' rights and the "substantial social costs" of imposing liability on public officials.[19]

A three-step inquiry is generally used to determine the existence and scope of official immunity: "First, does the doctrine of official immunity apply to the state official's conduct? Second, if it does apply, is the immunity absolute or qualified? And third, if it is only a qualified immunity, did the state official act corruptly, maliciously, or in bad faith?"[20]

### 1. Official immunity is applicable to Cox's and Stafford's actions.

Official immunity applies to an official's conduct if (1) it is within the scope of the official's authority, and (2) it is a discretionary act.[21] An official acts within the scope of the official's authority when he or she has the authority to engage in the underlying conduct out of which the alleged claim arises.[22] Discretionary acts are defined as those requiring "personal deliberation, decision and judgment."[23]

Cox's and Stafford's investigations, reports, and recommendations were within their authority because they were the types of actions that social workers and supervisors undertake during a CINA case. Smith focuses on the second prong of the official immunity test, arguing that because Cox and Stafford's actions were obligatory they could not qualify as "discretionary." His argument is unavailing in light of the nature of OCS's duties. Alaska Statute 47.05.065(4)(A), for example, makes OCS employees like Cox and Stafford responsible for placing children in its care "in a safe, secure, and stable environment." Determining what constitutes a safe and stable environment is not a mechanical act and instead implicates the use of discretion; as was illustrated in this case, this determination necessarily involves consideration of various alternatives and a decision about which custody arrangement is in the child's best interest. Because Cox's and Stafford's actions were within the scope of their authority and discretionary, some form of official immunity applies.

### 2. Stafford and Cox are not entitled to absolute immunity for Smith's Group B claims.

Because we find that official immunity applies to the actions of Stafford and Cox, it is essential to determine whether that immunity is absolute or qualified. Stafford and Cox argue for absolute immunity, while Smith disputes that they are entitled to any immunity. In *Aspen Exploration Corp. v. Sheffield*,[24] we considered three factors in determining whether a public official is entitled to absolute immunity:

(1) The nature and importance of the function that the officer performed to the administration of government . . .;

(2) The likelihood that the officer will be subjected to frequent accusations of wrongful motives and how easily the officer can defend against these allegations; and

(3) The availability to the injured party of other remedies or other forms of relief.[25]

The superior court analyzed the actions of Stafford and Cox in light of these factors.

---

16. *Alpine Indus., Inc. v. Feyk*, 22 P.3d 445, 447 (Alaska 2001).

17. *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 157–58 (Alaska 1987).

18. *Id.* at 158.

19. *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

20. *Alpine Indus.*, 22 P.3d at 447–48 (citing *Aspen Exploration*, 739 P.2d at 154, 158, 160).

21. *Id.* at 448.

22. *See Aspen Exploration*, 739 P.2d at 155 & n. 11. ("'[A]n abuse of authority is not synonymous with a lack of authority.'").

23. *Id.* at 155 (quotations omitted).

24. 739 P.2d 150 (Alaska 1987).

25. *Id.* at 159–60.

The court explained that the "nature and importance of the function" factor "cuts toward absolute immunity" because social workers' actions are "vital" to "child protection." The court stated that the social worker's role is "one of the most important functions that the state can perform on behalf of the most vulnerable and needy of its citizens, little kids." Under the second factor, the court reasoned that it is likely that social workers will be subject to frequent accusations of wrongful motives because of the "high stakes emotional involvement" of parents. Under the third factor, the court reasoned that the injured party has relief available in CINA proceedings. Thus, the superior court concluded, "[s]o I believe under State law that our Supreme Court would find this an appropriate situation for absolute immunity."

The superior court's analysis of the first factor is convincing. The actions of Stafford and Cox are highly important because social workers' investigations are truly vital to protect vulnerable children. Without social workers freely performing their investigatory duties, many children would remain in dangerous situations with unfit parents. Few governmental objectives can be considered more important than protecting this state's most valuable resource, our children. Thus, the first factor would favor a rule of absolute immunity.

However, in examining the second factor, there is no evidence that under qualified immunity social workers would be subjected to frequent lawsuits. While it is true that CINA proceedings involve the highly emotional issue of child custody, the level of emotion involved does not necessarily translate into a high number of lawsuits against social workers. Historically, these types of suits have been relatively rare, and Stafford and Cox present no empirical evidence that more lawsuits result if social workers are protected by qualified rather than absolute immunity. Furthermore, defending against the types of lawsuits that could be brought by parents may not be difficult because the suits are likely to involve basic questions of tort law and factual determinations of credibility. Thus, the second factor may actually favor qualified immunity.

Under the third factor, a blanket rule of absolute immunity for social workers would deny an injured party a remedy for certain claims. The injured party will not always find relief in a CINA proceeding because such proceedings only involve a parent's rights in relation to his or her child. Here, prosecution of a suit for defamation or false light would be the only way to vindicate Smith's rights pertaining to Cox's alleged staging of photographs and false reporting regarding the incident. If Cox has absolute immunity from a suit for such intentional torts, then Smith has no remedy available. Thus, the third factor favors qualified immunity for Cox and Stafford.

In sum, although the first factor may suggest that social workers should generally be entitled to absolute immunity, the other factors, particularly the factor concerning the availability of an alternative remedy, suggest that qualified immunity is appropriate. We conclude that Stafford and Cox are entitled only to qualified immunity for the Group B intentional tort claims.

Our conclusion that social workers enjoy qualified rather than absolute immunity finds support in our case law addressing immunity claims for other governmental officials. In *Prentzel v. State, Department of Public Safety*, we held that police officers were entitled to qualified immunity rather than absolute immunity for discretionary acts.[26] In a footnote in *Prentzel*, we recognized that generally "absolute immunity applies only to judges, legislators, and the highest executive officers of various levels of government" and that "other public officers are covered by qualified immunity."[27] Based on our analysis of the three-factor test, we conclude that adoption of a blanket rule extending absolute immunity for all actions of social workers is not warranted. Thus, we analyze the actions of Stafford and Cox under qualified immunity.

---

**26.** 53 P.3d 587, 591 (Alaska 2002).

**27.** *Id.* at 591 n. 12 (quoting 1 CIVIL ACTIONS AGAINST STATE AND LOCAL GOVERNMENT § 4.5, at 308 (Shephard's Editorial Staff eds., 2d ed.1992)).

3. **A genuine issue of material fact remains as to whether Cox is entitled to qualified immunity for the Count X defamation and false light claims, but all other Group B claims fail under qualified immunity.**

Smith has alleged that Cox and Stafford committed the torts of false light, false reporting, defamation, and trespass.[28]

 Qualified immunity precludes liability for such acts if they were done in good faith, that is, not maliciously or corruptly.[29] Where qualified immunity is raised by the moving party as grounds for summary judgment, the nonmoving party, in order to avoid summary judgment, must present some admissible evidence that creates an issue of fact as to whether the official acted in bad faith or with an evil motive.[30] In determining whether the nonmoving party has established the existence of such an issue of fact, we "will consider the affidavits, depositions, admissions, answers to interrogatories and similar material."[31] Where no issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is proper.[32]

 Aside from the allegations contained in Smith's complaint, there is scant evidence in the record supporting most of Smith's Group B claims. This shortcoming notwithstanding, we view another omission as fatal to most of these claims: Smith failed to present evidence that Cox or Stafford acted in bad faith or with a corrupt state of mind except with regard to his Count X defamation and false light claims. Unsubstantiated allegations contained in Smith's complaint that Cox and Stafford conspired against him are insufficient to create a genuine issue of material fact regarding Cox's and Stafford's states of mind as to the claims in Counts VII–IX.[33] We conclude that Smith's failure to identify any admissible evidence that could create an issue of fact regarding Cox's and Stafford's states of mind justified the superior court's decision to grant Cox and Stafford summary judgment on the basis of qualified immunity on the claims in Counts VII, VIII, and IX.

 However, Smith's affidavit does contain assertions indicating that a genuine issue of material fact exists concerning Cox's state of mind with regard to the defamation and false light claims in Count X. In the affidavit, Smith made specific statements about Cox "staging photographs showing garbage I had collected from cleaning the yard of the house I had just bought" and "arranging old muddy beer cans collected from the cleanup, claiming that I was drinking or having parties." He also claimed in his affidavit that, after he complained to Stafford, Cox was told of his complaint "and Cox threatened [that] I would never see my child if I ever complained about her again or questioned her authority." These statements provide evidence of Cox's alleged actions as well as implications of her motive. While the statements may be unsubstantiated by other evidence, they were made in an affidavit of a "duly sworn" witness, and they correspond to allegations made in Count X. Such an affidavit must be considered in determining whether a genuine issue of fact exists.

---

**28.** Smith alleges, as part of his trespass claim, that Cox improperly attempted to dissuade him from making further complaints about her conduct. This allegation most closely resembles a constitutional tort, *i.e.,* § 1983 claim, but Smith failed to pursue it as such. Even if viewed as alleging a constitutional tort, however, Smith's claim would be weak because Cox's alleged threat does not appear to have dissuaded Smith from challenging her handling of A.B.'s case during the CINA proceedings as he alleges.

**29.** *Aspen Exploration Corp.,* 739 P.2d at 158–59.

**30.** *See Jennings v. State,* 566 P.2d 1304, 1309 n. 14 (Alaska 1977) ("The non-movant, in order to prevent the entry of summary judgment, must set forth facts, admissible in court, which would ... demonstrate that a triable issue of fact exists.").

**31.** *Charles v. Interior Reg'l Hous. Auth.,* 55 P.3d 57, 59 (Alaska 2002) (internal quotations omitted).

**32.** *Duncan v. Retired Pub. Employees of Alaska, Inc.,* 71 P.3d 882, 886 (Alaska 2003).

**33.** *See State, Dep't of Highways v. Green,* 586 P.2d 595, 606 n. 32 (Alaska 1978) ("Mere assertions of facts in pleadings and memoranda are insufficient for denial of a motion for summary judgment.").

The statements in the affidavit, if true, indicate that Cox may have been acting in bad faith. Manufacturing a scene of excessive alcohol consumption by arranging beer cans for a photo to falsely create evidence to imply that Smith has an alcohol problem or is an unfit father could be malicious and corrupt. Threatening that Smith would never see his child in retaliation for complaining about those acts could likewise be evidence of malice. Thus, summary judgment in favor of Cox is improper as to the Count X defamation and false light claims because Cox is not protected by qualified immunity for actions taken maliciously, corruptly, or in bad faith.

In sum, summary judgment in favor of Stafford was justified because there are no material issues of fact in dispute and she is entitled to judgment as a matter of law. But because genuine issues of material fact remain as to whether Cox acted maliciously when she entered Smith's property, took photographs, and filed a report to document the incident, summary judgment was not appropriate for the Count X defamation and false light claims.

### 4. Smith's false light and defamation claims are not barred by collateral estoppel.

■ The superior court provided an alternative rationale for dismissing Smith's claims: they were barred by the doctrine of collateral estoppel. [Exc. 130] We need not address whether collateral estoppel bars the state law claims that the superior court correctly found were barred by qualified immunity. However, because qualified immunity does not bar the defamation and false light claims in Count X, we address whether these claims are barred by collateral estoppel.

■ Collateral estoppel, also known as issue preclusion, "renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties."[34] The doctrine serves "the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."[35] In determining whether to apply collateral estoppel, we use a four-part test, which asks whether:

(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action;

(2) the issue precluded from relitigation is identical to the issue decided in the first action;

(3) the issue was resolved in the first action by a final judgment on the merits; and

(4) the determination of the issue was essential to the final judgment.[36]

The burden of pleading and proving these elements rests on the party asserting estoppel.[37] "To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action."[38]

Stafford and Cox have met their burden under the first element because Smith was a party to the original CINA case. However, they have failed to meet their burden of proving the final three elements for collateral estoppel.

The second collateral estoppel element asks whether the issue to be precluded is identical to the issue decided in the first action. Here, the legal and factual issues litigated in the CINA case are different from the issues underlying Smith's claims for defamation and false light. Despite the fact that the defamation and false light claims stem from Stafford and Cox's CINA investigation, the issues underlying the defamation and false light claims were not litigated through

**34.** *McElroy v. Kennedy,* 74 P.3d 903, 907 (Alaska 2003).

**35.** *Campion v. State, Dep't of Cmty. & Reg'l Affairs, Hous. Assistance Div.,* 876 P.2d 1096, 1098 (Alaska 1994) (quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

**36.** *McElroy,* 74 P.3d at 907.

**37.** *See Hernandez v. City of Los Angeles,* 624 F.2d 935, 937 (9th Cir.1980).

**38.** *Id.*

the CINA case.[39] These claims do not concern the issue whether Cox and Stafford complied with CINA regulations, which was litigated during the CINA proceedings. Rather, they concern whether Cox's alleged staging of photographs of beer cans from Smith's yard constitutes defamation or portrayal in a false light. Thus, Cox and Stafford have failed to meet their burden of proving an identity of issues.

The third collateral estoppel element asks whether the issue to be precluded was resolved by final judgment in the first action. But here, the issues of defamation and false light were not resolved by final judgment in the CINA case. Although the decisions rendered in the CINA case constitute "final judgment" for purposes of placement, visitation, and custody of A.B., the record reveals that there was no judgment on the merits of the defamation and false light issues because those issues were not litigated during the CINA proceedings.[40]

Finally, the fourth collateral estoppel element requires that the determination of the issue to be precluded was essential to the final judgment. But here, a determination of the issues of defamation and false light was not essential to a final judgment in the CINA proceedings. Indeed, there was no determination of the issues of defamation and false light.

Because Cox and Stafford have failed to satisfy the final three parts of the collateral estoppel test with regard to Smith's Count X defamation and false light claims, collateral estoppel does not bar these claims. Thus, we reject the superior court's conclusion that collateral estoppel barred these two state tort claims.

**D. Smith's § 1983 Claim Is Barred by Qualified Immunity Under Federal Law.**

▮▮▮ Smith's final argument is that the superior court erred in dismissing his § 1983 claim on the basis of qualified immunity. In his complaint, Smith based his § 1983 claim on the following broadly worded allegation: "Ms. Cox and Ms. Stafford denied Mr. Smith and his daughter the protections of the United States Constitution . . . by preventing and denying Plaintiff Smith and the ability [to] seek the protections of the law by their conspiracy and actions." On appeal Smith asserts that Cox and Stafford impinged upon "the fundamental liberty interest [that] [Smith] retains in the care, custody, and management of [A.B.] even in the context of a CINA case."

▮▮▮▮ Under federal law, as under state law, officials being sued in their private capacity for discretionary acts performed as part of their official duties are protected by at least qualified immunity.[41] A two-step process is used to determine whether qualified immunity bars a § 1983 action. Courts first ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[42] If the allegations show a constitutional violation, courts then must determine whether the right allegedly violated was "clearly established," which occurs where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[43] Where either of these

---

**39.** *See Grant v. Anchorage Police Dep't,* 20 P.3d 553, 558 (Alaska 2001) (holding that collateral estoppel did not bar claim of disability discrimination because there was no identity of issues between plaintiff's previous claim for disability retirement benefits and his disability discrimination claim).

**40.** *See In re Adoption of A.F.M.,* 15 P.3d 258, 268 n. 46 (Alaska 2001) (stating that element requiring final judgment on the merits "encompasses the requirement that an issue actually be litigated").

**41.** Federal qualified immunity principles differ slightly from their state law counterpart. Federal law uses an objective standard for determining whether a violation is of the type that is actionable, while state law looks at the official's state of mind and asks whether the official acted in bad faith. *Compare Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) *with Aspen Exploration Corp.,* 739 P.2d at 158–59.

**42.** *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

**43.** *Id.* at 201–02 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034).

requirements is not met, the § 1983 claim will be barred by the official's qualified immunity.

■ Smith's § 1983 claim is based on allegations that Cox and Stafford acted improperly during A.B.'s CINA case. Specifically, Smith alleges that Cox and Stafford made false statements during their investigation and conspired to prevent him from regaining custody of A.B. Smith's claims about false statements and conspiracy fail to allege a violation of a constitutional right because they are "conclusory assertions without the leaven of confirming factual details." [44] Smith does not identify the specific false statements made by Cox or Stafford that support his § 1983 claim and fails to allege facts sufficient to establish a conspiracy between the two.[45] Further, as Smith was actively involved in A.B.'s CINA proceedings, it cannot reasonably be said that a reasonable official in Cox's or Stafford's position would understand that they were violating Smith's due process or parental rights by placing A.B. in foster care with the superior court's approval. Because the facts alleged in Smith's § 1983 claim fail to identify or factually support any specific violations of Smith's constitutional rights, the superior court did not err in dismissing this claim on the basis of federal qualified immunity.[46]

## V. CONCLUSION

Because Smith's Group A claims fail to state a cause of action upon which relief can be granted; because Smith's Group B claims, except the defamation and false light claims in Count X, are barred by qualified immunity; and because qualified immunity under federal law preclude Smith's § 1983 claims, we AFFIRM the superior court's grant of summary judgment to Cox and Stafford as to these claims. But because Smith's affidavit creates a genuine issue of material fact relevant to Cox's state of mind and collateral estoppel does not bar litigation of the Count X defamation and false light claims, we VACATE the superior court's grant of summary judgment in favor of Cox as to those two claims and REMAND for further proceedings consistent with this opinion.

BRYNER, J., not participating.

---

**44.** *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir.1988).

**45.** *Cf. id.* at 1560 ("[Plaintiff's allegations] contain *sufficient facts* that, if proven at trial, would defeat [the official's] immunity defense.") (emphasis added).

**46.** Because we hold that Smith's § 1983 claim is barred by qualified immunity, we need not address whether it is also barred by collateral estoppel.