STOWERS, Justice,
concurring, with whom CARPENETI, Chief Justice, joins only in paragraphs 1 through 8 of the concurrence.
I agree with the court's opinion. I write separately to respond to Justice Fabe's dissent. The dissent would hold that Giani is entitled to qualified immunity for having made a report of harm because many of Giani's allegations of harm were substantiated [1] by DHSS's investigation of Hill. In the dissent's view, the "truth of much of Giant's report strongly rebuts a claim by Hill that the report was made without a good-faith belief in the truth of its contents." [2]
The problem with the dissent's analysis is that the issue comes before the court on an appeal from a grant of summary judgment. Though the dissent's many factual arguments why Giani was not acting in bad faith when she made the report of harm seem persuasive in light of the comparatively weak evidence suggesting Giani may not have had a good faith basis for making the report, and these arguments may well carry the day when the case is tried to a jury, it is improper for a court on summary judgment to weigh the facts,[3] make credibility determinations, *29 [4] or draw inferences from the facts in favor of the party moving for summary judgment.[5] But that is in essence what the dissent is doing: the dissent parses and weighs the facts and circumstances surrounding Gia-ni's plan of care; the affidavits, letters, and sworn discovery responses; and Hill's deposition testimony to conclude that none of this evidence is sufficient to raise a genuine issue of material fact.
I believe the court's opinion demonstrates why these various pieces of evidence suffice to create a genuine issue of fact, especially given our well-recognized standard that all inferences are required to be drawn in favor of the party opposing summary judgment and we are to view the evidence in a light most favorable to that party.[6]
But the dissent makes a good point that Giani finds herself in perhaps an impossible and unfair situation. She is a mandatory reporter, who is required by law to make reports of suspected harm being caused to vulnerable adults in the care of care providers,[7] and who could be liable for failing to make such reports.[8] The Alaska Legislature has made a policy decision that in the important interest of protecting vulnerable citizens, mandatory reporters should not be subject to liability for making reports of harm. But given the way the immunity statute is written, Giani does not enjoy complete immunity for making a report of harm; the statutory immunity granted is qualified by a good faith requirement.[9] And as demonstrated by this case, the existence of good faith is a factual question,[10] and if the subject of the report of harm is able to raise a genuine issue of material fact on the question of good faith, summary judgment in favor of the mandatory reporter will not be possible and a trial will be required.
The dissent persuasively argues that this court's opinion may create a Catch-22 by which a mandatory reporter like Giani could be liable both for reporting and for failing to report suspected harm; and that this court's decision undermines the legislative policy of encouraging people to report suspicions of abuse. While it certainly is not this court's intent to undermine the legislature's commendable policy, that may be exactly what this court's decision will do as a practical matter; if this is the outcome, it will be most unfortunate.
In light of this court's substantial jurisprudence on summary judgment, I doubt it will come as a surprise that we hold the qualified immunity statute will not provide immunity when the very thing that qualifies the immunity-good faith-becomes factually contested. It is the legislature's prerogative to make the policy decision whether immunity for mandatory reporters should be qualified or complete, and if the legislature believes that immunity should be complete, I am confident it will amend the statute to accomplish its purpose.
FABE, Justice, dissenting.
I disagree with the court's decision to reverse the superior court's grant of summary judgment in favor of Giani. In my view, Hill has not demonstrated a genuine issue of fact as to whether Giani was acting in bad faith or with an evil motive when she filed her report of harm. What makes this decision especially disturbing is the fact that many of the allegations in Cliani's report were substantiated. Indeed, Hill was found to have: (1) placed J.H. on restriction for weeks at a time; (2) prevented her from leaving the home; (8) taken away J.H.'s Christmas pres *30 ents; (4) refused to allow J.H. to participate in the Special Olympics; and (5) isolated J.H. by preventing her from visiting with family or friends.[1] The truth of much of Giant's report strongly rebuts a claim by Hill that the report was made without a good-faith belief in the truth of its contents. Further, as the court's opinion points out, Giani was a mandatory reporter.[2] Had she not made a report, she could potentially have been held liable for her failure to report. The court, by creating potential liability for Giani's substantially true report, creates a Catch-22 by which Giani could be liable both for reporting and for failing to report. And the court's decision today undermines the legislative policy of encouraging people to report suspicions of abuse.
Summary judgment is appropriate where reasonable jurors could not disagree on the resolution of the issue.[3] I believe that the evidence presented to the court could not lead a reasonable juror to conclude that Giani acted in bad faith. I therefore believe that Hill has failed to raise a genuine issue of material fact.
In order to recognize a factual question about Giani's good faith in the face of the corroborating DHSS investigation, the court is forced to conclude that the truth of Giant's claims is irrelevant to the question of her good faith.[4] But we have never before held that a mandatory reporter's good faith was in doubt where the report was later found to be truthful. It seems implausible that Giani made her report without a good-faith belief in its contents, only to be vindicated by coincidence. The court's decision to expose Giani to liability, despite the fact that investigation of her report revealed real and troubling mistreatment, conflicts with the legislature's stated policy of encouraging reporters and protecting the vulnerable.
The court also points out that the DHSS investigation failed to substantiate Giani's allegation of physical abuse.[5] But Giani merely passed along J.H.'s own report that her care provider had hit her. Giani's report also documented J.H.'s display of defensive behavior, which corroborated J.H.'s report of being struck by her care giver,. Although the DHSS investigation could not confirm that J.H. was actually being abused, there doesn't seem to be any dispute that J.H. claimed that her care giver was hitting her or that Giani was compelled to report it. Certainly a single erroneous allegation in Giant's report of harm cannot demonstrate bad faith where the bulk of her allegations were substantiated and where these other allegations would have compelled Giani to file a report of harm, with all the attendant consequences for Hill. I therefore believe that the results of the DHSS investigation substantially corroborating Giant's report of harm put to rest claims that Giani was not acting in good faith.
Despite the results of the DHSS investigation, the court concludes that Hill has presented sufficient evidence to put Giani's intentions in doubt.[6] In determining that Giani may have acted in bad faith, the court relies on four pieces of evidence. In my view, none of them presents a genuine factual question as to whether J.H. was being mistreated or whether Giani believed such mistreatment was real when she made her report.
First, the court finds it significant that Giani failed to make allegations of mistreatment in her plan of care, which she filed three months before her report of harm, and points to several sections in the plan which are arguably inconsistent with Giani's later allegations.[7] Despite the fact that the report *31 of harm was written after several additional months of gathering information, and was corroborated by independent investigation, the court apparently feels that it is reasonable to conclude that the more positive picture described in the plan remained accurate at the time Giani filed her report.[8] This, says the court, could be evidence that Gani did not believe her own report. But a plan of care, which may be circulated to many different parties, may not be the appropriate document in which to communicate concerns about mistreatment. What is clear is that the basic validity of the concerns Giani raised in her report were confirmed, and nothing in the plan suggests that those findings were erroneous.
The court next points to affidavits, letters, and sworn discovery responses disputing Gia-uni's allegations of mistreatment and describing Hill in complimentary terms.[9] But if the statute is to offer any protection to mandatory reporters, the mere fact that Hill disputes the allegations made against her cannot be enough to defeat Gani's immunity. Even if this evidence is accepted as true and the results of the DHSS investigation discounted, this is not evidence that Giani acted in bad faith.
Third, the court relies on Hill's statement in her deposition that when J.H. was removed from her home, both J.H.'s father and Giani attempted to comfort Hill:; "[J.H.'s father] hugged me, as did [Giani], together at the same time, and they both comforted me and told me that they knew I had not abused [J.H.]." (Emphasis added.)[10] We must assume Giani made these statements. But it does not seem unusual that, in the emotionally fraught setting of J.H.'s removal, Giani and J.H.'s father would attempt to comfort Hill, who was obviously upset. If anything, Giani's actions in seeking to comfort Hill seem contrary to the idea that Giani was acting out of malice toward Hill. A jury could not credibly infer from this statement that Giani made her report in bad faith.
In any case, Giani never alleged that Hill was physically abusing J.H. She only reported that J.H., herself, had made such an accusation and was displaying defensive behavior consistent with that report. Thus, Giani's statement that she did not believe that Hill had abused J.H. does not contradict her account of what J.H. told her, which she was compelled to report as a mandatory reporter. Moreover, Giani's lay opinion that these behaviors were insufficient to prove abuse has little bearing on her good-faith belief in the truth of the underlying facts.[11]
Finally, the court points to Hill's allegations in her deposition that Giani repeatedly threatened to make things "very ugly" for Hill if Hil did not allow J.H. to be removed from her facility.[12] But these threats are alleged to have been made more than a week after Giani filed her report of harm. And the mere fact that Giani strongly desired to remove J.H. from Hill's facility after reporting mistreatment cannot reasonably be construed as evidence that Giani fabricated her report in bad faith.
All of this evidence taken together is distinguishable from the claim in Smith v. Stafford that a social worker staged phony pictures with beer cans and scattered garbage at the home of the parents in a child protection case.[13] In that case, though the social worker may have harbored good-faith concerns about the well-being of Smith's child, we concluded that "[mJanufacturing a seene of excessive alcohol consumption ... to falsely create evidence to imply that Smith has an alcohol problem or is an unfit father could be malicious and corrupt," and that ing that Smith would never see his child in retaliation for complaining about those acts could likewise be evidence of malice." [14]
*32 Our decision in Stafford suggests that Hill has not presented sufficient evidence to show a genuine issue as to Giani's good faith. To overcome CGiani's immunity, Hill must present some evidence, beyond mere assertion, that Giani acted with malice. The evidence relied on by the court in this case does not begin to meet this threshold.
I am particularly troubled by the court's opinion today because it threatens to undermine the public policy behind qualified immunity for reporters of abuse of the most vulnerable among us. The opinion correctly observes that "the purpose of AS 47.24.120(a) is to encourage those who are required to report to do so without fear that their reports will subject them to liability." [15] The legislature has provided immunity for reporters like Giani, and the State's policy favors reports of harm, accepting the risk that caretakers may be subjected to fruitless investigations in the interest of protecting vulnerable adults who might otherwise suffer in the shadows. A pamphlet published by DHSS makes this clear, advising, "If in doubt, make the report." Although only those reports made in good faith merit protection, in this case there is insufficient evidence to raise a question of fact as to Giani's bad faith or evil motive in filing the report. Because allowing this case to go forward could chill future reports by subjecting good-faith reporters to the threat of costly and stressful litigation, I would affirm the grant of summary judgment in this case. I therefore respectfully dissent.

. When a DHSS employee "substantiates" an allegation of harm, all this means is that the employee investigating the allegation determined that there was something akin to probable cause to believe that the allegation was true-it does not mean the allegation has been proved to be true (which would require a hearing or a trial), and it does not mean the allegation has been established as fact.

. Op. Dissent at 29.

. Kelly v. Municipality of Anchorage, 270 P.3d 801, 804 (Alaska 2012) (citing Meyer v. State, Dep't of Revenue, Child Support Enforcement Div., ex rel. N.GT., 994 P.2d 365, 367 (Alaska 1999).

. Id.

. Olson v. City of Hooper Bay, 251 P.3d 1024, 1033 (Alaska 2011).

. Miller v. Safeway, Inc., 170 P.3d 655, 658 (Alaska 2007).

. AS 47.24.010(a).

. AS 47.24.010(c).

. AS 47.24.120(a) ("A person who in good faith makes a report under AS 47.24.010 ... is immune from civil or criminal liability that might otherwise be incurred or imposed for making the report.").

. See, e.g., Reeves v. Alyeska Pipeline Serv. Co., 926 P.2d 1130, 1144 (Alaska 1996) (quoting Professor Corbin's statement that "Good faith always involves questions of fact." 3A ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 654B, at 96 (1960 & supp. 1994).

. Op. at 18.

. Op. at 25.

. See Airline Support, Inc. v. ASM Capital II, LP., 279 P.3d 599, 604 (Alaska 2012) (citing Burnett v. Covell, 191 P.3d 985, 990 (Alaska 2008)).

. Op. at 28.

. Op. at 28.

. Where qualified immunity is raised as a ground for summary judgment, the nonmoving party has the burden of presenting "some admissible evidence that creates an issue of fact as to whether the official acted in bad faith or with an evil motive." Smith v. Stafford, 189 P.3d 1065, 1074 (Alaska 2008).

. Op.at 26-27.

. Op. at 26.

. Op. at 26-27.

. Op. at 27.

. See, eg., Greywolf v. Carroll, 151 P.3d 1234, 1242 (Alaska 2007) (A reporter's "lay assessment of whether the facts known to him were sufficient to support an assault charge d[id] not create a genuine issue material fact" about whether he had a good-faith belief in the truth of those facts.).

. Op. at 27.

. 189 P.3d 1065, 1069 (Alaska 2008).

. Id. at 1075.

. Op. at 25.