NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CARL E. BROWN, | ) | |
| | ) | Supreme Court No. S-16870 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-07041 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | No. 1745 – October 30, 2019 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Carl E. Brown, pro se, Kenai, Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Stowers, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

1. Carl E. Brown is an inmate in the custody of the Alaska Department of Corrections (DOC). In September 2013 Brown was transferred from Hudson Correctional Facility in Colorado to Alaska's Spring Creek Correctional Center. Brown sought to ship three boxes of his property from Hudson to Spring Creek at DOC's expense.

---

\*      Entered under Alaska Appellate Rule 214.

2.	Shortly before his transfer, Brown paid for three shipments at a total cost of $105.58.  In October 2013 Brown requested reimbursement for his shipping costs.  Brown based his claim for reimbursement on AS 33.30.251(b) and section 811.05 of DOC's Policies and Procedures.  The statute governs DOC's disposal of abandoned personal property and provides:

> The commissioner shall provide for the shipment to the receiving facility of a reasonable amount of the prisoner's property, as determined by the commissioner, when the prisoner is transferred from one correctional facility to another.[1]

The version of section 811.05 in effect at the time[2] stated, in pertinent part:

> L. Transfer of Prisoner Personal Property
>
> 1. One property box of personal property and any approved medical appliance(s) shall be transferred with the prisoner at the time of transfer.
>
> 2. A prisoner transferring within the state will be allowed to ship one box of stored personal property and one box of legal property
>
> . . . .
>
> 4. Prisoners being returned from out of state shall be allowed to ship two boxes of personal property and one box of legal property
>
> . . . .
>
> 9. Property in excess of the above:
>
> a.  . . . All shipments of property shall be at the

---

[1]	AS 33.30.251(b).

[2]	DOC has since amended its Policies and Procedures.  *See* STATE OF ALASKA, DEP'T OF CORR., POLICIES & PROCEDURES § 811.05 (effective Oct. 2018), http://www.correct.state.ak.us/pnp/pdf/811.05.pdf.

prisoner's expense as follows:

> b. The Department shall ship one box of personal property at no[] cost to indigent prisoners.

> c. The Department shall ship one box of legal materials at no cost to indigent prisoners . . . .

Brown contended that section 811.05 reflects DOC's determination of a "reasonable amount" of property.

3. DOC denied Brown's request. Brown then filed a grievance, reiterating his argument; DOC again denied reimbursement. Brown filed an unsuccessful appeal to the facility manager. He then filed an appeal to the standards administrator. This last appeal was denied in December 2013.

4. In December 2014 Brown, self-represented, filed a complaint in superior court. Brown named several DOC employees as defendants. He again sought reimbursement for his shipping costs, but he also sought "compensatory and punitive damages resulting from the unlawful and unconstitutional deprivation of [his] property in the absence of due process."

5. Brown struggled to serve process on the named employees. Eventually he amended his complaint, naming DOC as the lone defendant. The amended complaint was directed against "the above-named defendant and its officers in their personal and official capacities," but it was substantively identical to the earlier version.

6. DOC moved to dismiss Brown's complaint. While the motion to dismiss was pending, Brown moved for summary judgment. After Brown moved for summary judgment, DOC reimbursed Brown's inmate account for the full amount of the shipping costs. It then opposed his motion and filed its own cross-motion for summary

judgment. DOC argued that the reimbursement rendered Brown's claim moot.[3] DOC also noted that, as a state agency, it was statutorily immune from punitive damages, which made up the bulk of Brown's requested relief. In his response to DOC's cross-motion, Brown conceded that DOC was immune; he indicated that he would dismiss his claims against DOC, but he maintained that the DOC employees named in the earlier iterations of his complaint remained parties to the case. He reiterated his claim for summary judgment against the named employees.

7. DOC responded that the named employees were no longer parties to the case; additionally, DOC argued they were shielded from liability by qualified immunity.

8. The superior court denied Brown's motion for summary judgment and granted DOC's cross-motion for summary judgment, relying in part on Brown's "admission that [DOC] is immune."

9. Brown moved to supplement his briefing to establish that he still had live claims against the named employees. The court denied his motion, ruling that even if it construed Brown's complaint to include the named employees as defendants it would still conclude that he had "presented no factual claims, evidence, or legal theory countering [DOC's] assertions that qualified discretionary function immunity shield[ed] the employees from civil liability."

10. Brown appeals from the grant of summary judgment, arguing that the named employees are the "real parties in interest," that he has "established a due process claim of constitutional magnitude," that he is entitled to punitive damages, and that his claims are not moot. The question whether Brown intelligently ceded his claims

---

[3] DOC reiterates this argument on appeal. We elect to reach the merits of this case without deciding whether DOC's unilateral action could render Brown's claim moot.

against DOC is not before us; neither is the question whether the named employees actually remained parties to the litigation because the superior court determined that Brown's claims would fail even if he had preserved them against the named employees. We assume for the sake of argument that the claims against the named employees were properly pleaded, noticed, and remained live. The issues we must resolve are simply whether the superior court properly granted summary judgment against Brown's claims that his constitutional rights to due process were violated and whether Brown provided any evidence to raise a genuine issue of material fact on DOC's qualified immunity defense.[4] We perceive no constitutional violation in this case, and therefore we conclude that the grant of summary judgment was proper. We also conclude that Brown has failed to provide evidence sufficient to overcome DOC's qualified immunity defense.

11. Brown notes instances in his grievance process when DOC officials relied on language from the Policies and Procedures applicable to transfers of inmates within Alaska rather than those applicable to transfers from out of state like his own. It is possible that DOC misapplied this policy during the various stages of Brown's grievance process; the superior court did not rule on whether DOC violated its policy at all. We note that, under the policy in effect at the time Brown's claim arose, inmates were entitled to have one box of property "transferred" with them and they were "allowed to ship" additional boxes. These distinct terms suggest that DOC would bear the cost to "transfer" property while inmates would pay for "shipments," i.e., to send

---

[4] "We review a grant of summary judgment de novo, reading the record in the light most favorable to, and drawing all reasonable inferences in favor of, the non-moving party. 'We will affirm a grant of summary judgment if there are no genuine issues of material fact and the prevailing party was entitled to judgment as a matter of law.' " *Regner v. N. Star Volunteer Fire Dep't, Inc.*, 323 P.3d 16, 21 (Alaska 2014) (citation omitted) (quoting *Smith v. State*, 282 P.3d 300, 303 (Alaska 2012)).

their property by mail or courier. Only for indigent inmates would DOC "ship" property "at no cost to" those inmates.

12. Even if the named employees did misapply DOC's policy, those administrative errors would not rise to the level of violating Brown's constitutional rights to due process. First, Brown did not clearly argue that his procedural due process rights were violated or explain how they were violated. Had he made a cogent due process argument, we typically would consider his private interest in reimbursement (an economic interest), the risk of erroneous deprivation with and without additional safeguards, and the government's interest in avoiding different procedures.[5] But our ability to conduct this analysis is limited because Brown does not identify structural flaws in the grievance process or propose alternatives to it. In any case, we have repeatedly treated inmates' purely economic interests as "not particularly compelling."[6] Given the vague and conclusory argument Brown makes, we cannot conclude that Brown's rights to procedural due process were violated.

13. "The due process clause guarantees more than fair process . . . it also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests."[7] Absent the heightened protections that attach to fundamental rights, which are not present in this

---

[5] *See Sarah A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 427 P.3d 771, 778 (Alaska 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[6] *See, e.g.*, *Barber v. Schmidt*, 354 P.3d 158, 161 (Alaska 2015) (quoting *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1112 (Alaska 2002)).

[7] *Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors*, 205 P.3d 326, 340 (Alaska 2009) (omission in original) (quoting *Treacy v. Muni. of Anchorage*, 91 P.3d 252, 268 (Alaska 2004)).

case, a substantive due process claim " 'will only stand if the state's actions are so irrational or arbitrary, or so lacking in fairness, as to shock the universal sense of justice.' "[8] Brown refers to *Exxon Shipping Co. v. Baker*[9] in discussing his substantive due process claim. This case affirms the prevailing rule in American courts that "outrageous" and "wanton" conduct justifies an award of punitive damages.[10] Brown further cites *Sturm, Ruger & Co. v. Baker,*[11] which held that "the magnitude and the flagrancy of an offense" are factors that courts should consider when awarding punitive damages.[12] Though Brown does not expressly use the terms "outrageous" or "wanton" to describe the named employees' conduct, he does describe their conduct as "flagrant." Giving his argument the benefit of pro se lenience,[13] we understand his argument to be that all of these words characterize DOC's conduct here. If these allegations were supported by any admissible evidence, they might create a genuine issue of material fact about a violation of Brown's substantive due process rights. But Brown failed to adduce any evidence that the named employees denied reimbursement in a flagrant, outrageous,

---

**8**     *Ross v. State, Dep't of Revenue*, 292 P.3d 906, 913 (Alaska 2012) (quoting *Church v. State, Dep't of Revenue*, 973 P.2d 1125, 1130 (Alaska 1999)).

**9**     554 U.S. 471 (2008).

**10**     *Id.* at 493.

**11**     594 P.2d 38 (Alaska 1979).

**12**     *Id.* at 48.

**13**     *Patterson v. Walker*, 429 P.3d 829, 831 (Alaska 2018) ("[T]he claims of unrepresented litigants are 'liberally construed.' " (quoting *Barber v. Schmidt*, 354 P.3d 158 (Alaska 2015))).

wanton, or bad-faith manner.[14] His unsupported statements that the named employees "deliberately" misapplied the Policies and Procedures and showed "disdain" toward his grievance do not suffice, either.

14. Brown also does not explain how his claims can overcome the named employees' immunity defense; he simply reiterates his argument that the named employees' conduct was "flagrant." "[O]fficials being sued in their private capacity for discretionary acts performed as part of their official duties are protected by at least qualified immunity."[15] To overcome qualified immunity, not only must a constitutional violation be found, but also the plaintiff must show that "the right allegedly violated was 'clearly established,' which occurs where the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[16] Even if Brown could establish that the named employees misread the relevant Policies and Procedures and that their interpretation impaired his constitutional rights, the record contains no evidence that they had any reason to be aware of this alleged constitutional violation. Again, bare allegations of "flagrant" conduct do not suffice to overcome the protection of qualified immunity.

15. We AFFIRM the superior court's order granting summary judgment against Brown.

---

[14]    We have carefully examined Brown's complaint and amended complaint, his motion and responsive briefs in superior court, and his briefs in this court looking for any indication that he adduced any evidence of the named employees' allegedly "flagrant" or similar conduct, and we have found none.

[15]    *Smith v. Stafford*, 189 P.3d 1065, 1076 (Alaska 2008).

[16]    *Id.* (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).